UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICHOLAS OSTRANDER
    Plaintiff,

vs.                                        No.
                                           Hon.

CONNELLY SKIS INC.,
a foreign corporation; and
FOGARTY'S LAKE FLOWER MARINA, LLC,
a foreign limited liability company;

    Defendants.
_____

# COMPLAINT AND JURY DEMAND

Plaintiff, NICHOLAS OSTRANDER, individually, by and through his attorneys, MUELLER LAW FIRM, by Wolfgang Mueller, complains against Defendants, CONNELLY SKIS INC., a foreign corporation, ("CONNELLY"), and FOGARTY'S LAKE FLOWER MARINA, LLC, a foreign limited liability company ("FOGARTY'S") and states the following:

1. Plaintiff, NICHOLAS OSTRANDER, is a citizen of the State of Michigan.

2. Defendant, CONNELLY, is and was, at all times, a foreign citizen, whose corporate headquarters and principal place of business is 20621 52nd Ave., Lynnwood, WA, 98036. CONNELLY conducts business in the State of Michigan and particularly within the Eastern District of Michigan.

3. Defendant, FOGARTY'S, is and was, at all times, a foreign citizen, it being a New York limited liability company whose corporate headquarters and principal place of business is 260 Lake Flower Ave., Saranac, NY, 12983. FOGARTY'S conducts business in the State of Michigan and particularly within the Eastern District of Michigan.

4. Based upon information and belief, and after conducting due diligence, FOGARTY's has no members who are Michigan citizens.

5. Jurisdiction is founded upon the diversity of citizenship of the parties pursuant to 28 USC §1332, and damages which exceed $75,000.00, exclusive of interest and costs, and the personal jurisdiction over Defendants based on their contacts with the state of Michigan.

6. Venue is proper in this Court, pursuant to 28 USC §1391, as Defendants conduct business, and therefore reside, in this District.

## GENERAL ALLEGATIONS

7. Defendant, CONNELLY, is a manufacturer of waterskis, including the 2016 GT Pro Model waterski at issue in this case.

8. Defendant, FOGARTY'S, through its in-house pro shop H2O Pro Shop, is a manufacturer, developer, installer, and retailer of waterski boot plates and bindings, including the Fogman Stealth boots/bindings at issue in this case. FOGARTY'S is also an authorized retailer of CONNELLY waterskis, including

the 2016 67" GT waterski.

9. All FOGARTY'S employees and/or H2O Pro Shop employees were agents of FOGARTY'S and FOGARTY'S is responsible for their conduct under the doctrine of *respondeat superior*.

10. In 2016, Plaintiff was a student at Michigan State University and a member of the MSU competitive waterski team, a club sport.

11. In October 2016, following the waterski season, Plaintiff was looking to buy a new waterski and boots. CONNELLY had a Collegiate Waterski Program and offered to sell Plaintiff a 2016 67" GT pro-model waterski for $672 plus shipping.

12. Based upon information and belief, CONNELLY had previously manufactured and sold Fogman Stealth bindings in a joint development program with Fogman out of Saranac Lake, New York.

13. Based upon information and belief, the Connelly/Fogman Stealth binding joint venture lasted from 2012 to 2015.

14. By the fall of 2016, CONNELLY sold the tooling for the Stealth binding to Defendant, FOGARTY'S.

15. CONNELLY advised Plaintiff to contact FOGARTY'S to arrange to have the boots/bindings and skis drilled for assembly.

16. Plaintiff contacted FOGARTY'S and communicated with Austin

Rdzanek.  On October 12, 2016, Mr. Rdzanek offered to do the drilling and assembly for free if Plaintiff would purchase the Connelly 67" GT ski from FOGARTY'S.  Mr. Rdzanek also offered free shipping.

17. Plaintiff agreed to the offer and the finished products were shipped without charge by FOGARTY'S to Plaintiff's home in Michigan.

18. FOGARTY'S assembled the bindings and drilled holes into the CONNELLY 67" GT waterski to fit the tension plates.

19. On September 12, 2017, Plaintiff was practicing with the MSU waterskiing team on the Grand River in Lansing, Michigan.

20. The water was calm during the practice session.

21. As Plaintiff was making a routing cut in the water around a buoy, the waterski suddenly failed at the drill site for the binding, causing the waterski to flex in compression, making it impossible for the boot to release as designed.

22. Based upon information and belief, CONNELLY drilled the holes that were located at the failure point.

23. At the time of the incident, Plaintiff was using the waterski in its intended, foreseeable manner.

24. As a direct and proximate cause of Defendants' negligence and gross negligence set forth below, Plaintiff, NICHOLAS OSTRANDER, suffered the following injuries and damages:

    a.    Severely comminuted, displaced and angulated fracture of the left tibia-fibula shaft, requiring open reduction, internal fixation surgery;

    b.    Displaced bimalleolar fracture of the right ankle requiring open reduction, internal fixation surgery;

    c.    Multiple surgeries;

    d.    Subsequent incomplete closure of the wound sites and infections;

    e.    Long periods of physical therapy;

    f.    Tremendous physical pain and suffering;

    g.    Significant emotional distress;

    h.    Obvious disfigurement and scarring of both lower extremities;

    i.    Significant medical expense, including out-of-pocket expenses;

    j.    Significant humiliation and embarrassment;

    k.    Inability to conduct normal activities of daily living;

    l.    Other injuries and damages which may become known in the future;

    m.    The injuries and damages, both economic and non-economic, may be permanent.

## COUNT I – NEGLIGENCE OF CONNELLY

25.    Plaintiff incorporates by reference all previous paragraphs as though fully restated herein.

26.    At all times relevant to this action and during the time of the design, manufacture, and distribution of the subject waterski, CONNELLY, as a

manufacturer, was under a statutory and common law duty to design, manufacture, and test the waterski and bindings to eliminate any unreasonable risk of foreseeable injury when the products were being used in their intended and foreseeable manner, as well as foreseeable misuse.

27. Despite the duties set forth above, CONNELLY was independently negligent and breached implied warranties in at least the following respects:

    a. Negligently failing to design, develop, and manufacture the waterski, and its binding components, with adequate strength to withstand foreseeable loads and stresses without catastrophically failing;

    b. Negligently failing to utilize established engineering methodologies, such as Failure Mode and Effects Analyses (FMEA), to identify and eliminate foreseeable hazards associated with the design of the product;

    c. Negligently failing to recognize and implement reasonable alternative designs, including adding layers of carbon fiber to make the ski able to withstand foreseeable loads and stresses;

    d. Negligently failing to warn users, via on-product warnings or warnings associated with an owner's manual, that the ski could fail catastrophically during foreseeable use and could cause severe injury;

    e. Negligently failing to ensure that the product was fit for its intended uses;

    f. Other acts of negligence that will be discovered through the course of this litigation.

28. As described above, technically and economically feasible alternative designs existed in the marketplace as of the time the subject product was

6

manufactured that would have eliminated the risk of this particular injury mechanism and would have prevented Plaintiff's injuries;

Accordingly, Plaintiff respectfully requests that the trier of fact award all damages allowed under Michigan law. Plaintiff also requests that this court award pre-judgment interest, costs, and attorney fees so wrongfully incurred.

### COUNT II – CONNELLY'S GROSS NEGLIGENCE

29. Plaintiff incorporates by reference all previous paragraphs as though fully restated herein.

30. Based upon information and belief, during the time of the design, manufacture, and distribution of the waterski, Defendant had actual knowledge, obtained from customers, dealers, and warranty claims of prior incidents of the waterski failing with the same failure mode as occurred in the instant case.

31. Given CONNELLY's experience in the watersport industry, it knew to a virtual certainty that a catastrophic failure could cause injuries similar to those suffered by Plaintiff.

32. Despite such knowledge, Defendant willfully disregarded that knowledge in the production of the product.

33. Defendant's conduct also constitutes "gross negligence," which is defined as *"conduct so reckless as to demonstrate a substantial lack of concern for whether injury results."* MCL 600.2945.

7

34. Based on Defendant's actual knowledge and gross negligence, MCL 600.2946(4), 600.2946a, 600.2947(1)-(4), and 600.2948(2), do not apply, pursuant to MCL 600.2949(a).

35. Defendant's conduct was a direct and proximate cause of Plaintiff's injuries and damages, as set forth above.

Accordingly, Plaintiff respectfully requests that the trier of fact award all damages allowed under Michigan law. Plaintiff also requests that this court award pre-judgment interest, costs, and attorney fees so wrongfully incurred.

## COUNT III – NEGLIGENCE OF FOGARTY'S

36. Plaintiff incorporates by reference all previous paragraphs as though fully restated herein.

37. At all times relevant to this action and during the time of the design, manufacture, distribution, and sale of the subject waterski and binding components, FOGARTY'S, as a manufacturer and assembler, as well as a non-manufacturing seller of the Connelly waterski, was under a statutory and common law duty to design, manufacture, assemble, and test the waterski and bindings to eliminate any unreasonable risk of foreseeable injury when the products were being used in their intended and foreseeable manner, as well as foreseeable misuse.

38. Despite the duties set forth above, FOGARTY'S was independently negligent and breached implied warranties in at least the following respects:

    a.    Negligently failing to design and manufacture the waterski and its binding components with adequate strength to withstand foreseeable loads and stresses without catastrophically failing;

    b.    Negligently assembling and installing the binding hardware to the waterski, such that it could not withstand foreseeable loads and stresses under intended and foreseeable use;

    c.    Negligently failing to recognize and implement reasonable alternative designs to make the ski able to withstand foreseeable loads and stresses;

    d.    Negligently selling the waterski and Fogman Stealth bindings when it knew of previous incidents of similar product failures;

    e.    Negligently failing to warn purchasers of the propensity of the Connelly waterski to fail when subjected to foreseeable loads, given FOGARTY'S knowledge of previous failures; and

    f.    Other acts of negligence that will be discovered through the course of this litigation.

39. As described above, technically and economically feasible alternative designs existed in the marketplace as of the time the subject product was manufactured that would have eliminated the risk of this particular injury mechanism and would have prevented Plaintiff's injuries;

Accordingly, Plaintiff respectfully requests that the trier of fact award all damages allowed under Michigan law. Plaintiff also requests that this court award pre-judgment interest, costs and attorney fees so wrongfully incurred.

**COUNT IV – GROSS NEGLIGENCE OF FOGARTY'S**

40. Plaintiff incorporates by reference all previous paragraphs as though

9

fully restated herein.

41.  Based upon information and belief, during the time of the design, manufacture, and distribution of the waterski, FOGARTY'S had actual knowledge of prior incidents of the waterski failing with the same failure mode as occurred in the instant case.

42.  Given FOGARTY'S' experience in the watersport industry, it knew to a virtual certainty that a catastrophic failure could cause injuries similar to those suffered by Plaintiff.

43.  Despite such knowledge, Defendant willfully disregarded that knowledge in the assembly and sale of the of the product.

44.  FOGARTY'S' conduct also constitutes "gross negligence," which is defined as *"conduct so reckless as to demonstrate a substantial lack of concern for whether injury results."* MCL 600.2945.

45.  Based on FOGARTY'S' actual knowledge and gross negligence, MCL 600.2946(4), 600.2946a, 600.2947(1)-(4), and 600.2948(2), do not apply, pursuant to MCL 600.2949(a).

46.  Defendant's conduct was a direct and proximate cause of Plaintiff's injuries and damages, as set forth above.

Accordingly, Plaintiff respectfully requests that the trier of fact award all damages allowed under Michigan law.  Plaintiff also requests that this court award

pre-judgment interest, costs, and attorney fees so wrongfully incurred.

                              MUELLER LAW FIRM

                              s/Wolfgang Mueller
                              WOLFGANG MUELLER (P43728)
                              Attorney for Plaintiff
                              41850 W. Eleven Mile Rd., Ste. 101
                              Novi, Michigan 48375
                              (248) 489-9653
                              wolf@wolfmuellerlaw.com

Dated:  September 3, 2020

## JURY DEMAND

Plaintiff, by and through his attorneys, Mueller Law Firm, demands a jury in the above-entitled action.

                        `    MUELLER LAW FIRM

                              s/Wolfgang Mueller
                              WOLFGANG MUELLER (P43728)
                              Attorney for Plaintiff
                              41850 W. Eleven Mile Rd., Ste. 101
                              Novi, Michigan 48375
                              (248) 489-9653
                              wolf@wolfmuellerlaw.com

Dated:  September 3, 2020